30 F.3d 139
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Subroto ROY, Plaintiff-Appellant,
v.
UNIVERSITY OF HAWAII, et al. Defendant-Appellee.
 No. 92-16385.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 14, 1994.
Decided July 29, 1994.
 
 Before: POOLE, CANBY and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Subroto Roy was an untenured professor of economics with the University of Hawaii-Manoa. The University received student complaints about his performance and elected not to renew his contract, allegedly because of performance-related deficiencies. Roy sued, alleging national origin discrimination and a deprivation of due process. After a bench trial, the district court determined that he had not been discriminated against because of his national origin. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291, and we affirm.
 
 
 3
 * Roy argues that the decision not to process the students' complaint against him through the University's M-4527 grievance procedure was itself a discriminatory act which tainted the University's evidence of a legitimate business reason for his termination. He argues in addition that the failure to apply M-4527 resulted in his being deprived of a liberty interest without due process. We disagree.
 
 
 4
 * The district court concluded that M-4527 was a non-mandatory procedure which could be used at the option of the student grievant. This is a finding of fact reviewable only for clear error. See Fed.R.Civ.P. 52(a); Shultz v. Department of Army, 10 F.3d 649, 653 (9th Cir.1993).
 
 M-4527 holds in relevant part:
 Definitions
 
 5
 * * *
 
 
 6
 Remedy--An action to correct an individual student's situation without imposing a sanction on a faculty member.
 
 
 7
 * * *
 
 
 8
 III. Procedures for Resolution of Academic Grievances
 
 
 9
 If a student has fulfilled his/her responsibilities and believes that a faculty member has failed to meet any of the responsibilities stated in Section I of this document, or has acted arbitrarily and/or capriciously in any other area of this academic relationship, the student may initiate action to achieve remedy.
 
 
 10
 M-4527 allows a student, after first meeting directly with the faculty member, to seek intervention by the department chair, and if not satisfied, to appeal to the Academic Grievance Committee for the purposes of obtaining a full formal hearing. The quoted language indicates that "the student may" seek remedy, indicating that use of M-4527 is nonmandatory and at a student's discretion. Only students may appeal from the chair's resolution of the problem, thereby invoking a full grievance hearing. The University also points out that M-4527 is limited to the seeking of a "remedy," defined above to exclude any sanction of the faculty member. In this case, the student complainants sought a restriction on Roy's teaching of required graduate courses.
 
 
 11
 Roy focuses on another passage which he says compels the conclusion that M-4527 is mandatory: "These policies and procedures are established ... to provide consistent and equitable treatment for faculty and students of UH-Manoa in resolving issues arising from the academic relationship between individual faculty and individual students." This general language does not require us to view M-4527 as mandatory. Once the procedural hurdle of student invocation has been met, M-4527 provides a regular procedure which offers a student a legitimate chance at redress and a faculty member procedural regularity. Other avenues may still be open, but may suffer drawbacks for both parties: a reduced likelihood of redress for students, and reduced certainty for faculty members. M-4527 need not be the only form of dispute resolution; it just happens to be the most formal one.
 
 
 12
 We conclude that the district court did not clearly err in finding M-4527 to be nonmandatory. Because the district court also found that no student had requested the use of M-4527, a determination Roy does not contest, Roy cannot show that the University discriminated against him by failing to apply M-4527's procedures to his case.
 
 B
 
 13
 Roy argues further that whether or not the University was required to process the complaint against him through M-4527, the procedure the university used deprived him of a liberty interest without due process. We are not persuaded.
 
 
 14
 Roy's original complaint included a due process claim. This claim was dismissed on summary judgment in October 1991, and that order merged into the June 1992 district court judgment from which Roy appealed. Thus, the issue was not waived by Roy and is properly before us.
 
 
 15
 The requirements of the Due Process Clause apply only when a liberty or property interest is at stake. Board of Regents v. Roth, 408 U.S. 564, 569 (1972); Hayes v. Phoenix-Talent School Dist. No. 4, 893 F.2d 235, 237 (9th Cir.1990). The termination of a tenured employee only implicates a liberty interest if an employer makes charges against the employee which damage his standing and associations in the community or foreclose his ability to seek other employment opportunities. Roth, 408 U.S. at 573; Wheaton v. Webb-Petett, 931 F.2d 613, 617 (9th Cir.1991). The employer's charges must be publicly disclosed. Bishop v. Wood, 426 U.S. 341, 348 (1976); Matthews v. Harney County School Dist. No. 4, 819 F.2d 889, 891-92 (9th Cir.1987). Charges which carry the stigma of moral turpitude, such as dishonesty or immorality, will suffice, but charges alleging incompetence or an inability to get along with others will not. Portman v. County of Santa Clara, 995 F.2d 898, 907 (9th Cir.1993); Hayes, 893 F.2d at 235. In short, the charges must result in serious damage to standing or a significant foreclosing of opportunities. Hyland v. Wonder, 972 F.2d 1129, 1141 (9th Cir.1992), cert. denied, 113 S.Ct. 2337 (1993).
 
 
 16
 The reasons given for Roy's termination do not implicate a liberty interest. First, they were not publicly disclosed, only communicated to Roy privately by letter. Second, the reasons--that Roy hadn't published or improved and didn't meet the department's needs--do not subject Roy to stigma or improperly foreclose his future opportunities. Instead, these reasons go to Roy's competence. Even the additional unstated reason that Roy taught poorly and was condescending to students only addresses matters of competence and Roy's ability to get along with others. Under Portman and Hayes, these reasons are insufficient to create a liberty interest. See Jablon v. Trustees of California State Colleges, 482 F.2d 997, 1000 (9th Cir.1973) (finding professor failed to establish liberty interest where reasons for denial of tenure were his weaknesses as a teacher and scholar).
 
 II
 
 17
 Roy argues further that the judgment should be reversed because key University witnesses Richard Dubanoski, Chung Lee, and Darrell Krulce materially perjured themselves. This issue is properly before us because Roy raised it with the district court in a timely fashion. See Plaintiff's Objections to Defendants' Proposed Findings of Fact (II) Objections on Grounds of Perjury (May 20, 1992).
 
 
 18
 Roy's claim is not based on evidence of perjury external to the trial and discovered after its close. Such evidence may suffice to obtain a new trial. See, e.g., Harre v. A.H. Robins Co., 750 F.2d 1501 (11th Cir.1985), vacated in part on other grounds, 866 F.2d 1303 (1989). Nor has Roy, strictly speaking, brought forth evidence of perjury. Perjury requires 1) false testimony regarding 2) a material matter, given with 3) the willful intent to provide false testimony, rather than as a result of confusion, mistake or false memory. United States v. Dunnigan, 113 S.Ct. 1111, 1116 (1993). Roy points out inconsistencies in several witnesses' testimony, but offers no evidence to negate the real possibility that the inconsistencies might arise from a faulty memory or confusion over events four years in the past.
 
 
 19
 The essence of Roy's claim is that the testimony of the specified witnesses should not have been credited because they contradicted themselves. This is a credibility determination, and we review it as such. See Nicholson v. Rushen, 767 F.2d 1426, 1427 (9th Cir.1985) (treating assertion on appeal that witnesses committed perjury, based solely on evidence which was before the factfinder, as attack on credibility finding). The district court's credibility determinations are entitled to special deference. Fed.R.Civ.P. 52(a); Anderson v. Bessemer City, 470 U.S. 564, 573 (1985); EEOC v. Bruno's Restaurant, 13 F.3d 285, 287 (9th Cir.1993).
 
 
 20
 The testimony Roy points to offers us no reason to disturb the district court's decision to credit Dubanoski, Lee and Krulce. Roy points to two categories of alleged perjury. First, he argues that Lee, Krulce and Dubanoski lied about when and whether they met in the fall of 1988 and the spring of 1989 and what they discussed. Second, he argues that Lee lied about the "Jussawalla incident" and about the explanation for his remark about Indian economists who think too much of themselves.
 
 
 21
 The first category of "perjury" relates to a completely immaterial set of facts. Indeed, the district court did not bother to make any findings of fact regarding when Dubanoski, Krulce and Lee ever met or what they discussed. The district court was not required to discredit Dubanoski and Krulce's material testimony because an immaterial part of their testimony was in dispute.
 
 
 22
 The second set of "perjury" regards Lee's testimony about derogatory remarks he allegedly made. Roy insists that with regard to the Jussawalla incident, either he or Lee must be lying, but this ignores the possibilities that 1) Roy may have misinterpreted the incident, or 2) memories may have faded over the intervening four years. Indeed, Lee's actual testimony was simply that he couldn't remember any such incident. There is also no discrepancy in Lee's testimony regarding his "Indian economist" remark; at one point, he explained that the remark was spurred by a story he knew about a Professor Bhagwati, and at another he testified that he did not mention Bhagwati by name when he made the remark. In sum, nothing in these allegations of inconsistent testimony overcomes the "special deference" we give the district court's credibility determinations.
 
 III
 
 23
 Roy contends that the district court erred in its ultimate finding of no discrimination. We review this finding of fact for clear error, Shultz, 10 F.3d at 653, and we find none.
 
 
 24
 * To prevail in a Title VII case for disparate racial treatment, a plaintiff must show that he was "singled out and treated less favorably than others similarly situated on account of race." Gay v. Waiters' and Dairy Lunchmen's Union, 694 F.2d 531, 537 (9th Cir.1982). The plaintiff bears the initial burden of establishing a prima facie case of discrimination. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). Once the plaintiff succeeds in establishing a prima facie case, the burden of production shifts to the employer to rebut the presumption by articulating a legitimate nondiscriminatory reason for its employment decision. Fragante v. City and County of Honolulu, 888 F.2d 591, 595 (9th Cir.1989). If the employer presents legitimate reasons, the burden of production shifts back to the plaintiff to show that the purported reasons are merely a pretext for the retaliation or discrimination. Burdine, 450 U.S. at 255-56. The plaintiff must ultimately demonstrate that his employer intentionally discriminated against him. See St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 2749-56 (1993).
 
 
 25
 In a "mixed motive" case, the plaintiff needs only to show that discrimination was a "motivating" or "substantial" factor in the adverse decision against him. Compare Price Waterhouse v. Hopkins 490 U.S. 228, 258 (1989) (Brennan, J.) (plurality decision) with id. at 278 (O'Connor, J. concurring). The burden then shifts to the defendant to show that, absent the discriminatory animus, the same decision would have been reached anyway. Id. at 258, 259-60.
 
 B
 
 26
 Roy argues that the district court improperly confined its analysis of his claim to the McDonnell Douglas burden-shifting framework, incorrectly ruling that he had waived any argument under a Price Waterhouse mixed motive framework. We agree.
 
 
 27
 The University offers only one cite to the record as evidence that Roy waived a mixed motive theory. On the day before closing argument, Roy asked:
 
 
 28
 ROY: May I just ask the Court as well, is it the difference between a mixed motive case and a pretext case, or are we only discussing one?
 
 
 29
 THE COURT: My recollection is, is that I specifically asked that question; and [former counsel] said this is only a pretext case.
 
 
 30
 * * *
 
 
 31
 ROY: Very well.
 
 
 32
 The University has cited nothing else in the record to support a waiver argument and indicate this recollection was correct. To the contrary, the pretrial memorandum filed by Roy's counsel the day before trial spent several pages on Price Waterhouse and the mixed motive theory of proof.
 
 
 33
 Roy's "very well" was not sufficient by itself to constitute a waiver. Roy was not asked whether he waived a mixed motive theory of the case; he was simply told that his counsel had done so. Particularly in light of Roy's pro se status, we decline to read Roy's failure to object as a knowing and voluntary waiver. See Bates v. Jean, 745 F.2d 1146, 1150 (7th Cir.1984).
 
 C
 
 34
 However, this conclusion does not lead us to reverse the district court's finding of no discrimination. Even under Price Waterhouse, Roy has failed to prove that the district court's finding of no discrimination was clearly erroneous.
 
 
 35
 The district court declined to rule on whether Roy had satisfied the prima facie case because it concluded that the University had come forward with legitimate business reasons for its decision to terminate Roy, and Roy had failed to prove pretext. The University's evidence consists of declining teacher ratings, a letter signed by twenty graduate students detailing serious flaws in Roy's teaching, and repeated concerns in annual reviews and elsewhere over Roy's failure to specialize and publish more. This showing articulates a legitimate business reason for the decision not to retain Roy.
 
 
 36
 In the face of this evidence, Roy's evidence does not establish pretext or even prove that discrimination was a substantial factor in his termination decision. He points to stray, occasionally ambiguous remarks by three of the nine people involved in the ultimate decision to terminate, some of which might suggest stereotyping. Of course, "stray remarks in the workplace ... cannot justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate criteria." Price Waterhouse, 490 U.S. at 277 (O'Connor, J., concurring).
 
 
 37
 Of the three people, one, Burnham Campbell, strongly supported Roy, and a second, Louis Rose, made only one comment (describing Roy as a "Brahmin from Cambridge") in the context of a letter supporting Roy; the comment might in fact have been a quote of someone else. No evidence suggests that the concern felt by the other decisionmakers over Roy's teaching and research, or the concern expressed by the graduate students who took the extreme step of signing the letter of complaint to the department chair, was anything but genuine.
 
 
 38
 Roy also alleges discriminatory bias on the part of Chung Lee. The evidence of Lee's animus is slender at best. However, even assuming arguendo some bias on the part of Lee, it appears that Lee and Dubanoski would have reached the same decision anyway. In spite of any alleged bias, Lee supported Roy's renewal every year until 1989. The reasons he gave for this time recommending against Roy were amply supported by the record and consistent with the findings of the seven-professor personnel committee: Roy's teaching had declined dramatically, and he had failed to publish in an area of department need. Dubanoski cited the same reasons. There is no reason to believe that but for any private animus Chung Lee might have harbored, Roy would still have been renewed. We find no clear error in the district court's conclusion that Roy did not prove discrimination.
 
 IV
 
 39
 Finally, Roy objects to the district court's findings because they fail to consider adequately the testimony of Lauren Ekroth, Alfred Morris, Milton Friedman and T.W. Schultz. Roy contends that a factfinder may not disregard uncontradicted testimony without explaining the reason for the rejection. See White Glove Building Maintenance, Inc. v. Brennan, 518 F.2d 1271, 1274-76 (9th Cir.1975).
 
 
 40
 Generally, a district court's findings of fact are sufficient so long as they give the appellate court an adequate understanding of the factual basis for the district court's decision. Vance v. American Hawaii Cruises, Inc., 789 F.2d 790, 792 (9th Cir.1986). Moreover, "[a] judge is not required to mention every item of evidence and either adopt it or reject it. We presume that the judge considers all of the evidence, and relies on so much of it as supports the finding, unless the judge states otherwise." Western Pac. Fisheries, Inc. v. SS President Grant, 730 F.2d 1280, 1285 (9th Cir.1984).
 
 
 41
 Taken as a whole, Judge Kay's findings of fact meet the general test for sufficiency. He found that the University had established legitimate nondiscriminatory reasons for Roy's termination based on his weak teaching, failure to publish, and failure to specialize in the area for which he had been hired. Morris and Ekroth testified positively regarding Roy's teaching ability, but they were contradicted by Campbell, Rose and Lee, not to mention the student witnesses. Friedman and Shultz testified to Roy's general ability and the quality of his publications, but they were contradicted by "every witness associated with the Department." None of Roy's witnesses offered uncontradicted testimony which might have required a district court explanation of the reasons for its rejection; consequently, the district court was not obligated to expressly reject each witness's testimony.
 
 V
 
 42
 We conclude that the University of Hawaii was not required to process the complaint against Subroto Roy through its M-4527 procedure, and did not deprive him of any protected liberty interest. The district court's conclusion that Roy was terminated for reasons other than his national origin was not clearly erroneous. For these reasons, the decision of the district court is
 
 
 43
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3