108 F.3d 1384
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Frank CARMEN, Plaintiff-Appellee,
v.
John Michael BOYD, and Pamela Kirkpatrick White, husband and
wife, Paul Gilbert Marsh and Barbara Smith Marsh, husband
and wife, Edwin R. Moore and Madeline Moore, husband and
wife, Manoj Vyas and Sucheta Vyas, husband and wife, and
Pima County, a political subdivision of the State of
Arizona, Defendants-Appellants.
 No. 95-15455.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 13, 1996.
Decided March 10, 1997.
 
 1
 Before: T.G. NELSON and TASHIMA, Circuit Judges, and BURNS, Senior District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Several officials of Pima County, Arizona, appeal the district court's denial of their summary judgment motion in which defendants raised qualified immunity as a defense to various claims brought by Frank Carmen, a former County employee. Carmen brought an action against the individual defendants and the County under 42 U.S.C. §§ 1983 and 1985 and under state law after he was fired as Pima County's Director of Indigent Legal Services. Carmen claims defendants violated the First and Fourteenth Amendments to the United States Constitution by denying him a pre-termination hearing, by firing him for engaging in speech protected under the First Amendment, and by stigmatizing him as a result of certain comments.
 
 
 4
 We have jurisdiction under 28 U.S.C. § 1291. For the reasons that follow, we AFFIRM.
 
 FACTS
 
 5
 Frank Carmen was employed as the Director of Indigent Legal Services for Pima County in 1990. Carmen's previous position was protected under the Pima County Merit System. In 1990, Carmen's position was converted from protected status under the Merit System to an exempt position. Carmen wrote to defendant Manoj Vyas, then Assistant County Manager, and informed him that Carmen wanted to retain the protections of the Merit System. Vyas's handwritten notes at the bottom of a memo from Carmen dated November 5, 1990, indicate Vyas consented to and acknowledged Carmen's continued protections under the Merit System. Carmen's rights under the Merit System are also referenced in a January 5, 1993, memo from Vyas. In the first sentence of the memo, Vyas states: "It has been determined that you were employed by Pima County as a part of the Merit System, and therefore, you are entitled to the rights which the Merit System provides."
 
 
 6
 In November 1992, defendants John Boyd, Paul Marsh, and Edwin Moore were elected to the Pima County Board of Supervisors. During the time relevant to this dispute, the manner in which indigent legal services were provided to criminal defendants was a matter of some public debate. On November 16, 1992, Moore contacted Carmen to discuss the performance of Pima County Public Defender Susan Kettlewell. Carmen defended Kettlewell against various complaints by Moore during this conversation.
 
 
 7
 On January 4, 1993, Boyd, Marsh, and Moore were sworn in as members of the Pima County Board of Supervisors and Vyas was appointed to the position of County Administrator. On January 5, Vyas terminated the employment of six County employees, including Carmen. Carmen thereafter filed this suit.[3]
 
 DISCUSSION
 I. Notice of Appeal
 
 8
 Before reaching the merits of this dispute, we must first address Carmen's assertion that the only defendant properly before this court is Pima County.
 
 
 9
 Fed.R.App.P. 3(c) provides a notice of appeal must "specify the party or parties taking the appeal by naming each appellant in either the caption or the body of the notice of appeal." Fed.R.App.P. 3(c) (emphasis added).
 
 
 10
 The notice of appeal was filed in this case after the district court issued an order denying defendants' motion for summary judgment. The notice of appeal lists Pima County and the individual defendants in the caption; however, the body of the notice lists only Pima County. Carmen relies on this distinction to support his contention that the individual defendants are not properly before this court. We previously rejected this argument in Reynolds v. Wagner, 55 F.3d 1426, 1428 n. 4 (9th Cir.), cert. denied, 116 S.Ct. 339 (1995). We, therefore, find the individual defendants in the present appeal are properly before this court because they were correctly listed in the caption of the notice of appeal. Id.
 
 II. Jurisdiction
 
 11
 Before deciding the merits, we must also dispense with a jurisdictional issue. Because this case comes to us on a denial of summary judgment and before discovery was conducted, the jurisdiction of this court is somewhat limited. Carmen correctly notes that several issues raised by defendants are not properly before this court. We will not detail each argument that defendants impermissibly bring before us; however, all pertain to whether Carmen can prove the merits of his claims.
 
 
 12
 "[A] defendant entitled to invoke a qualified-immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." Johnson v. Jones, --- U.S. ----, 115 S.Ct. 2151, 2159 (1995). Thus, to the extent the district court denied summary judgment on disputed questions of fact, we have no jurisdiction.
 
 
 13
 Ordinarily this court only has jurisdiction over final decisions of the district courts; however, the denial of summary judgment based on qualified immunity is immediately appealable under the collateral order rule. Armendariz v. Penman, 75 F.3d 1311, 1316 (9th Cir.1996) (en banc ). Thus, while we cannot address the question of whether material questions of fact exist, this court has jurisdiction to decide whether defendants are entitled to qualified immunity for their conduct based upon the facts that were before the district court. Accordingly, only those arguments by defendants that pertain to the legal questions surrounding qualified immunity will be addressed, and our review will be limited to the issue of "whether the legal norms allegedly violated by the defendant[s] were clearly established at the time of the challenged actions." Id. at 1316-17 (quoting Mitchell v. Forsyth, 472 U.S. 511, 528 (1985)).
 
 III. Qualified Immunity
 
 14
 We review the denial of qualified immunity de novo. Doe v. Petaluma City School Dist., 54 F.3d 1447, 1449 (9th Cir.1995). The general test for qualified immunity has three parts: "(1) the identification of the specific right allegedly violated; (2) the determination of whether that right was so 'clearly established' as to alert a reasonable officer to its constitutional parameters; and (3) the ultimate determination of whether a reasonable officer could have believed lawful the particular conduct at issue." Romero v. Kitsap County., 931 F.2d 624, 627 (9th Cir.1991) (citations omitted). Even if constitutional violations occurred, public officials could prevail if the rights allegedly violated were not "clearly established" or the officials could have reasonably believed their conduct to be lawful. Id.
 
 A. Property
 
 15
 The district court refused to grant the individual defendants qualified immunity on Carmen's procedural due process claim involving Carmen's alleged property interest in his employment. The district court also found Carmen's termination without a pre-termination opportunity to respond violated a clearly-established right.
 
 
 16
 Before defendants can be liable under 42 U.S.C. § 1983 for procedural due process violations, Carmen must show defendants deprived him of a property interest in his employment. Wheaton v. Webb-Petett, 931 F.2d 613, 618-19 (9th Cir.1991). The applicable state law determines whether an employee has a protected property interest in his or her employment.[4] Clements v. Airport Authority of Washoe County, 69 F.3d 321, 331 (9th Cir.1995).
 
 
 17
 Arizona Revised Statute § 11-352(C) establishes the rights of employees covered under county merit systems. The statute provides that "[a]ny employee who was included as a covered employee in the county employee merit system at the time he assumed his present position and whose position becomes exempt ... may elect to remain included under the merit system." The statute also provides that an employee covered under a merit system who is terminated must be given the opportunity to accept a vacant position within the merit system for which that employee is qualified.
 
 
 18
 The record reflects Carmen did, in fact, elect to remain under the protections of the Merit System and that defendants were aware of his election to do so. On November 5, 1990, when Carmen's position was switched from one that fell under the Merit System to an unclassified position, he informed Vyas in writing that he wished to retain the protections of the Merit System. Vyas acknowledged Carmen's right to remain under the protections of the Merit System in his handwritten notes found at the bottom of Carmen's November 5 memo and in his memorandum to Carmen dated January 5, 1993. We conclude, therefore, Carmen had a specific right in the form of a property interest in his job under Arizona law at the time of his termination.
 
 
 19
 It is firmly established that certain procedures must be followed before a public employee is terminated. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985). An employee with a protected property interest in his employment is entitled to notice and an opportunity to respond to the charges against him. Id. at 545-46. See also Wheaton, 931 F.2d at 617 (some type of hearing required before employee is deprived of constitutionally-protected property interest). Thus, it was firmly established at the time of Carmen's 1993 termination that he was entitled to notice and an opportunity to respond. Because discovery has never been completed in this action, the district court did not explicitly decide whether Carmen received the process to which he was entitled; however, the district court concluded Carmen suffered an unreasonable violation of a clearly-established right because he was terminated without an opportunity to respond. We agree. Based on the law for termination of public employees with protected property interests in their jobs, it was unreasonable for Vyas to terminate Carmen without some pre-termination procedures. We hold, therefore, the district court correctly denied defendants qualified immunity on Carmen's procedural due process claim.
 
 B. Liberty
 
 20
 Carmen also contends statements made by defendants in conjunction with Carmen's termination deprived him of a constitutional right to be free from stigmatizing comments. The district court concluded genuine issues of material fact existed as to this claim because discovery had not been completed. Although we have no jurisdiction to determine the factual issues, we can determine whether Carmen had a right to be free from stigmatizing comments. We undertake this task because a § 1983 cause of action may be dismissed before discovery commences if a plaintiff fails to allege violations of clearly-established rights. Doe, 54 F.3d at 1450.
 
 
 21
 The district court framed Carmen's allegation as "the right to be free of stigmatizing accusations of moral turpitude in conjunction with a violation of a constitutional right." On the facts before us, the underlying constitutional right would be Carmen's termination without adequate pre-deprivation procedures.
 
 
 22
 The law on Fourteenth Amendment liberty interests was well settled when defendants allegedly made statements about Carmen. "[One's] liberty interest is implicated ... when the state makes a 'charge against him that might seriously damage his standing and associations in his community.' " Vanelli v. Reynolds School Dist. No. 7, 667 F.2d 773, 777 n. 5 (9th Cir.1982) (quoting Stretten v. Wadsworth Veterans Hosp., 537 F.2d 361, 365 (9th Cir.1976)). A liberty interest is also affected if an individual's "good name, reputation, honor, or integrity is at stake, or when the government action stigmatizes the individual, effectively foreclosing his freedom to take advantage of other employment opportunities." Roth v. Veteran's Admin. 856 F.2d 1401, 1411 (internal citations omitted). In addition, accusations involving a person's reputation for honesty or morality will also implicate due process liberty interests. Vanelli v. Reynolds School Dist. No. 7, 667 F.2d at 777.
 
 
 23
 Accordingly, Carmen's right to be free from stigmatizing comments was clearly established at the time. We, therefore, conclude the district court's order allowing discovery to proceed on Carmen's liberty interest claim was proper and defendants are not entitled to qualified immunity on Carmen's liberty interest claim.
 
 C. First Amendment
 
 24
 Defendants also appeal the district court's denial of qualified immunity on Carmen's claim that he was terminated for making comments protected by the First Amendment.
 
 
 25
 A public employee's speech is protected under the First Amendment if the speech involves a matter of public concern and "the employee's interest in expressing herself on th[e] matter [is not] outweighed by any injury that the speech could cause to the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Lambert v. Richard, 59 F.3d 134, 136 (9th Cir.), cert. denied, 116 S.Ct. 673 (1995). This protection applies even if the speech occurs privately between the employer and the employee. Connick v. Myers, 461 U.S. 138, 146 (1983). See also Chateaubriand v. Gaspard, 97 F.3d 1218, 1223 (9th Cir.1996) (complaints to superiors and not to general public does not detract from First Amendment protection).
 
 
 26
 The district court found Carmen and defendant Moore had a conversation in which the high cost of the delivery of indigent legal services in Pima County was discussed. The district court also found Carmen produced sufficient evidence to support his contention that indigent legal costs were "a matter of frequent public debate" and a matter of public concern.
 
 
 27
 To determine whether speech is related to a matter of public concern, the "content, form, and context of a given statement, as revealed by the whole record" must be examined. Hyland v. Wonder, 972 F.2d 1129, 1137 (9th Cir.1992), cert. denied, 508 U.S. 908 (1993). "[S]peech that concerns 'issues about which information is needed or appropriate to enable the members of society' to make informed decisions about the operation of their government merits the highest degree of first amendment protection." McKinley v. City of Eloy, 705 F.2d 1110, 1114 (9th Cir.1983) (quoting Thornhill v. Alabama, 310 U.S. 88, 102 (1940)). The rights of indigent criminal defendants to a competent and publicly-supported defense is a cornerstone of the criminal justice system. Carmen's statements to Moore about the performance of both the prosecutor's office and the public defenders' office, therefore, relate to a matter of public concern. See Connick, 461 at U.S. 148-49 (speech on performance of public officials can be protected).
 
 
 28
 Defendants assert Carmen's statements concerned only internal policies or employee grievances; however, the record does not reflect that Carmen was involved in any office disputes at the time of his speech.
 
 
 29
 Defendants' argument that Carmen's speech did not reach members of the public and, therefore, could not relate to matters of public concern is without merit. Speech does not have to be made to the public to be protected under the First Amendment.
 
 
 30
 In summary, we agree with the district court that Carmen's statements to Moore addressed a matter of public concern. Accordingly, we hold the district court correctly found defendants have no qualified immunity based on the nature of Carmen's speech.
 
 
 31
 Carmen's First Amendment rights, however, must be balanced against the County's interests in efficient government operations. See Connick, 461 U.S. at 149-50. See also Pickering v. Board of Educ., 391 U.S. 563, 568 (1968). The factors that must be balanced are whether Carmen's speech (1) impaired discipline or control by superiors, (2) disrupted co-worker relations, (3) eroded a close working relationship premised on personal loyalty and confidentiality, (4) interfered with the performance of his duties, or (5) obstructed the routine operation of the office. Hyland, 972 F.2d at 1139.
 
 
 32
 Defendants assert the underlying subject of Carmen and Moore's conversation was the efficiency of the public defenders' office. Defendants must show, however, Carmen's statements hindered the efficient operations of county government. Defendants made no such showing. The context of Carmen's statements militate against a finding of disruption of the workplace. The district found Carmen made his statements in a private telephone call to Moore; thus, any possible disruption stemming from Carmen's statements would have been minimal.
 
 
 33
 Defendants further contend the requirement of a balancing test entitles them to qualified immunity because it indicates Carmen's First Amendment rights were not clearly established. We have previously declined to adopt this argument. See Roth, 856 F.2d at 1408.
 
 
 34
 Based on the district court's finding that Carmen's statements were made in private coupled with the fact defendants did not offer evidence that Carmen's statements caused inefficiency or disruption in the workplace, we find Carmen's right not to be fired for his exercise of protected speech was clearly established. Accordingly, the district court properly denied defendants qualified immunity on Carmen's First Amendment claim.[5]
 
 IV. Attorneys' Fees
 
 35
 All parties request attorneys' fees for the appeal. We find the appeal is not frivolous under Fed.R.App.P. 38; damages for delay are not warranted under 28 U.S.C. § 1912; and the parties have not cited other authority for a fee award. See 9th Cir.R. 28-2.3. We, therefore, DENY the parties' requests for attorneys' fees.
 
 CONCLUSION
 
 36
 Based on the foregoing, we find the district court did not err when it denied defendants' motion for summary judgment based on a defense of qualified immunity.
 
 
 37
 AFFIRMED.
 
 
 
 *
 The Honorable James M. Burns, Senior District Judge for the District of Oregon, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by 9th Cir.R. 36-3
 
 
 [3]
 Defendants filed a motion to stay discovery pending resolution of the qualified immunity defense that is at the heart of this appeal. On November, 8, 1994, the district court ordered that discovery be stayed until the issue of qualified immunity was resolved
 
 
 [4]
 On May 7, 1993, the Pima County Merit System Commission voted to reinstate Carmen to the position he occupied prior to January 5, 1993, with full back pay. The Merit Commission did not, however, explicitly find Carmen had a property interest in his employment
 Neither party raised the issue of whether the Merit Commission's ruling had a preclusive effect upon the question of Carmen's property interest in his job. See Misischia v. Pirie, 60 F.3d 626, 629 (9th Cir.1995) (under some circumstances, state administrative determinations can have preclusive effect in federal court). We, therefore, decline to consider this issue.
 
 
 [5]
 Defendants argue no connection existed between Carmen's speech and his termination. Because defendants raise this issue for the first time on appeal, we decline to consider this argument. Securities and Exchange Comm. v. Worthen, 98 F.3d 480, 484 (9th Cir.1996)