97 F.3d 1218
 12 IER Cases 214, 96 Cal. Daily Op. Serv. 7425,
96 Daily Journal D.A.R. 12,203
 Francisco CHATEAUBRIAND, Plaintiff-Appellee,
v.
Marcus GASPARD and Kate Brown Gaspard; Martin Brown and
Betty Brown; Sid Snyder and Jane Doe Snyder; James
Jesernig and Jane Doe Jesernig; and Paul Berendt and Jane
Doe Berendt, Defendants-Appellants.
 No. 95-36086.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 7, 1996.
Decided Oct. 7, 1996.
 
 W. Dale Kamerrer, Law, Lyman, Daniel, Kamerrer & Bogdanovich, Olympia, WA, for defendants-appellants.
 Paul A. Lindenmuth, Law Offices of Neil J. Hoff, Tacoma, WA, for plaintiff-appellee.
 Appeal from the United States District Court for the Western District of Washington, Franklin D. Burgess, District Judge, Presiding. D.C. No. CV-94-05641-FDB.
 Before WRIGHT, BEEZER and O'SCANNLAIN, Circuit Judges.
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 We must decide whether state legislators are immune from suit for allegedly firing an employee who opposed performing illegal political campaign activity.
 
 
 2
 * In 1985 the Washington State Senate Democratic Caucus (the "Caucus") hired Francisco Chateaubriand as a public information officer in its communications department. Chateaubriand was promoted to the position of Communications section Coordinator in April 1990. The Communications section Coordinator managed personnel who prepared and distributed press materials, newsletters, questionnaires, speeches, and other materials for senators.
 
 
 3
 In the fall of 1990, Chateaubriand grew concerned that staff members of the Caucus were engaged in illegal campaign activity. Washington state law generally prohibits the use of state equipment, facilities, and employees' time for political campaign purposes. According to Chateaubriand, Paul Berendt, the Legislative Services section Coordinator, led the illegal use of staff and facilities for political campaigns. In November 1990, Marcus Gaspard was elected Democratic Leader within the Caucus, and Sid Snyder was elected Caucus Chairman. Martin Brown was appointed Caucus Staff Director. Following the 1991 legislative session, these Caucus leaders decided to evaluate and reorganize their staff.
 
 
 4
 Berendt suggested that the Caucus merge his section, Legislative Services, with Chateaubriand's section, Communications. Chateaubriand "vehemently objected" to this suggestion, fearing that a merger would shift illegal campaign work to his staff. Chateaubriand had previously refused requests to perform illegal campaign-related activities. At meetings with James Jesernig, then a Democratic member of the State Senate, Chateaubriand complained that there was no need for the Communications staff to perform illegitimate functions. Chateaubriand was "vocal" in his opposition to performing illegal work, protesting his concerns to Brown and others. Chateaubriand claims that in 1991 he was "frozen out" of the Caucus' "inner circle" of leadership. In 1992 Brown recommended to Gaspard and Snyder that they replace Chateaubriand with Linda Schactler as Communications section Coordinator, and demote Chateaubriand to a Senior Information Officer position. Gaspard and Snyder agreed to follow the recommendation. On March 18, 1992, Brown informed Chateaubriand that Schactler would replace him as Coordinator.
 
 
 5
 The parties dispute the reasons why Chateaubriand was demoted. According to Brown, Snyder, and Gaspard, Chateaubriand was simply not the best manager for the position. The decision to demote him, they argue, had nothing to do with his complaints about illegal campaigning. Gaspard and Snyder deny that they even knew Chateaubriand had voiced such concerns.
 
 
 6
 According to Chateaubriand, however, it is "simply inconceivable" that his opposition to illegal political work was not communicated to the Caucus leadership. He has "no doubt" that the "leadership ... wanted [him] out so they could use [his] staff for unlawful political purposes in the 1992 election."
 
 
 7
 Chateaubriand left his employment with the Caucus on June 30, 1992. While Chateaubriand claims that he received a permanent layoff notice in mid-June 1992, Brown denies that the Caucus ever terminated Chateaubriand's employment. According to Brown, Chateaubriand voluntarily resigned on May 4, 1992, requesting a final date of June 30, 1992.
 
 
 8
 Following an investigation in 1992, the Public Disclosure Commission ("PDC") issued a report finding that staff members of the Senate Democratic Caucus had engaged in illegal campaign activities.
 
 
 9
 Chateaubriand commenced this action in district court on December 19, 1994, pursuant to 42 U.S.C. § 1983. The complaint alleges that the Caucus leadership demoted and terminated him "in retaliation for his refusal to support and participate in illegal and unethical campaign activities on state premises." This conduct, he asserts, violated his First Amendment right to freedom of speech.[1]
 
 
 10
 On August 16, 1995, the district court granted summary judgment in favor of Jesernig and Berendt for lack of personal involvement. It also initially granted summary judgment as to Brown, Gaspard, and Snyder based on absolute legislative immunity. Upon reconsideration, however, the district court reversed its decision as to them. The court concluded in its order of October 2, 1995, that Brown, Gaspard, and Snyder ("the Caucus leaders") did not have absolute legislative immunity since terminating Chateaubriand's employment was an administrative act, not a legislative act. The court also denied summary judgment on the merits, finding that triable issues existed as to whether the Caucus leaders terminated Chateaubriand in retaliation for protected speech. Based on the principle that discharging a public employee in retaliation for protected speech violates clearly established law of which a reasonable person would have known, the district court further rejected the defense of qualified immunity.
 
 
 11
 The Caucus leaders interlocutorily appeal from the district court's order denying them summary judgment based on absolute and qualified immunity. We have jurisdiction under 28 U.S.C. § 1291. See Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817-18, 86 L.Ed.2d 411 (1985).
 
 II
 
 12
 Brown, Gaspard, and Snyder contend that they are entitled to absolute legislative immunity for their decision to demote and replace Chateaubriand.[2]
 
 
 13
 The Supreme Court "has generally been quite sparing in its recognition of claims to absolute official immunity." Forrester v. White, 484 U.S. 219, 224, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988). It is established, however, that "state legislators enjoy common-law immunity from liability for their legislative acts ... that is similar in origin and rationale to that accorded Congressmen under the Speech or Debate Clause." Supreme Court of Va. v. Consumers Union of the United States, Inc., 446 U.S. 719, 732, 100 S.Ct. 1967, 1974, 64 L.Ed.2d 641 (1980) (citing Tenney v. Brandhove, 341 U.S. 367, 376, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951) (section 1983 does not abrogate the common law immunity of state legislators)).
 
 
 14
 To determine whether legislative immunity applies, courts look to "the nature of the function performed, not the identity of the actor who performed it." Forrester, 484 U.S. at 229, 108 S.Ct. at 545. Absolute immunity applies only when legislators act in their legislative capacities, not in their administrative or executive capacities. Tenney, 341 U.S. at 379, 71 S.Ct. at 789-90. We must resolve whether Chateaubriand's demotion and replacement was a legislative act, to which immunity attaches, or an administrative act, to which it does not.
 
 
 15
 "In this circuit, we determine whether a particular act is legislative by considering two primary factors. First, does the act involve ad hoc decisionmaking, or the formulation of policy? Second, does the act apply to a few individuals, or the public at large?" Chappell v. Robbins, 73 F.3d 918, 920 (9th Cir.1996) (citing Trevino v. Gates, 23 F.3d 1480, 1482 (9th Cir.), cert. denied, 513 U.S. 932, 115 S.Ct. 327, 130 L.Ed.2d 286 (1994); Cinevision Corp. v. City of Burbank, 745 F.2d 560, 580 (9th Cir.1984), cert. denied, 471 U.S. 1054, 105 S.Ct. 2115, 85 L.Ed.2d 480 (1985)) (other citation omitted).
 
 
 16
 Applying these factors, courts generally consider legislators' employment and personnel decisions to be administrative, rather than legislative, acts. See, e.g., Smith v. Lomax, 45 F.3d 402, 405 (11th Cir.1995) ("[t]ypically, legislators' employment decisions are deemed administrative acts"); Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 28 (1st Cir.1994) (decision to replace librarian in legislative services office with member of another political party was administrative act), cert. denied, --- U.S. ----, 115 S.Ct. 1098, 130 L.Ed.2d 1066 (1995); Roberson v. Mullins, 29 F.3d 132, 135 (4th Cir.1994) (county board's termination of county employee was not legislative act).[3] The decision to demote and to replace Chateaubriand did not involve the formulation of policy, nor did it apply to the public at large. It therefore was an administrative act.
 
 
 17
 The Caucus leaders' contention that the court must examine the unique relationship between a legislative staff member and a political party caucus misreads Forrester 's functional approach to immunity questions. Forrester held that a state judge acted in an administrative capacity when he demoted and discharged a probation officer. 484 U.S. at 229, 108 S.Ct. at 545. Immunity did not protect the judge's decision even though the probation officer "performed functions that were inextricably tied to discretionary decisions that have consistently been considered judicial acts." Id. at 222, 108 S.Ct. at 541 (internal quotation marks and citation omitted).
 
 
 18
 There is "no basis for distinguishing the importance of a probation officer's functions to a state-court judge from the importance of a legislative researcher, or aide, to a state legislator." Gross v. Winter, 876 F.2d 165, 172 (D.C.Cir.1989). In either case, the character of the act, not the character of the agent, determines whether immunity applies. Forrester, 484 U.S. at 228, 108 S.Ct. at 544-45.
 
 
 19
 The decision to demote and to discharge a specific individual is an administrative act. The Caucus leadership is thus not entitled to absolute immunity for the conduct Chateaubriand alleges.
 
 III
 
 20
 In the alternative, the Caucus leaders contend that they are entitled to qualified immunity.
 
 
 21
 * Public officials are entitled to qualified immunity from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).
 
 
 22
 The Supreme Court recently clarified the scope of appellate review of a district court's denial of summary judgment on a claim of qualified immunity. Johnson v. Jones, --- U.S. ----, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). "[A] defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." Id. at ----, 115 S.Ct. at 2159. The only appealable issue "is a purely legal one: whether the facts alleged ... support a claim of violation of clearly established law." Mitchell, 472 U.S. at 528 n. 9, 105 S.Ct. at 2816 n. 9.
 
 
 23
 Thus, "we have jurisdiction to review the district court's decision that the defendants' alleged conduct violated clearly established law, but the collateral order doctrine does not provide appellate jurisdiction to review the district court's decision that genuine issues of fact exist." Armendariz v. Penman, 75 F.3d 1311, 1317 (9th Cir.1996) (en banc) (citing Johnson, --- U.S. at ---- - ----, 115 S.Ct. at 2156-59).
 
 B
 
 24
 The complaint alleges that the Caucus leaders demoted and discharged Chateaubriand in retaliation for his exercise of free speech rights protected by the First Amendment. The district court denied summary judgment on the merits, finding that genuine issues exist in this regard. The district court further denied summary judgment on qualified immunity grounds because "discharging a public employee in retaliation for protected speech violated clearly established law of which a reasonable person would have known." The reviewing court, faced with a challenge that the legal norms allegedly violated were not clearly established, "simply take[s], as given, the facts that the district court assumed when it denied summary judgment." Johnson, --- U.S. at ----, 115 S.Ct. at 2159.
 
 
 25
 The district court assumed that Chateaubriand "disfavored improper campaign activities, and resisted pressure upon his section to engage in such activities." He "griped repeatedly to those around him regarding the pressure to bring [his] section into 'the fold.' " "He particularly complained of the impropriety of the illegal campaigning rather than the mere fact of inter-section poaching by Paul Berendt." "[T]he [Caucus leaders], having some proven skill in things political, [were] perhaps ... aware of the general tenor of [his] remarks, and ... reasonably conclude[d] that he was not a 'team player', thus leading to his demotion."
 
 C
 
 26
 A public employer "may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." Rankin v. McPherson, 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987) (citing Perry v. Sindermann, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697-98, 33 L.Ed.2d 570 (1972)).
 
 
 27
 To prevail, an employee must prove that the conduct at issue was constitutionally protected, and that it was a substantial or motivating factor in the termination. If the employee discharges that burden, the government can escape liability by showing that it would have taken the same action even in the absence of the protected conduct.
 
 
 28
 Board of County Comm'rs v. Umbehr, --- U.S. ----, ----, 116 S.Ct. 2342, 2347, 135 L.Ed.2d 843 (1996) (citing Mt. Healthy City School Dist. Bd. of Ed. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977)); see also Waters v. Churchill, 511 U.S. 661, ----, 114 S.Ct. 1878, 1884, 128 L.Ed.2d 686 (1994) (plurality opinion).
 
 
 29
 * The first issue is whether Chateaubriand's conduct was constitutionally protected. To be protected, an employee's speech must address a matter of public concern. Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684, 1689-90, 75 L.Ed.2d 708 (1983). Whether an employee's speech addresses a matter of public concern is a question of law. Id. at 148 n. 7, 103 S.Ct. at 1690 n. 7.
 
 
 30
 Courts look to "the content, form, and context of a given statement" to resolve this issue. Id. at 147-48, 103 S.Ct. at 1690. "Employee expression that can be fairly considered as relating to a matter of political, social, or other concern to the community may be characterized as speech involving a matter of public concern." Voigt v. Savell, 70 F.3d 1552, 1559 (9th Cir.1995) (citing Connick, 461 U.S. at 146, 103 S.Ct. at 1689-90), cert. denied, --- U.S. ----, 116 S.Ct. 1826, 134 L.Ed.2d 931 (1996).
 
 
 31
 We accept as given for qualified immunity purposes the assumed fact that Chateaubriand complained of illegal campaign activity in the Caucus and of pressure on him to perform it. Johnson, --- U.S. at ----, 115 S.Ct. at 2159. "In evaluating the content of speech, courts have recognized certain subjects as inherently of public concern." Roth v. Veteran's Admin., 856 F.2d 1401, 1405 (9th Cir.1988). "[S]tatements regarding criminal misuse of public funds, wastefulness, and inefficiency in managing and operating government entities [are] matters of inherent public concern." Voigt, 70 F.3d at 1562 (citation omitted); see also Roth, 856 F.2d at 1405.
 
 
 32
 Chateaubriand's complaints regarding illegal campaign activity fall squarely within the category of content inherently of public concern. See, e.g., Hyland v. Wonder, 972 F.2d 1129, 1137 (9th Cir.1992) (memorandum exposing abuses, inefficiency, threats to public safety, potential civil rights violations, and incompetence of law enforcement officials, addressed matters of public concern), cert. denied, 508 U.S. 908, 113 S.Ct. 2337, 124 L.Ed.2d 248 (1993); Burgess, 918 F.2d at 106 (public employee's speech opposing ordinances believed to conflict with state standards related to matters of public concern).
 
 
 33
 The form and context of Chateaubriand's speech does not detract from its public character. In examining context, we focus on the point of the speech. Roth, 856 F.2d at 1405 (citing Connick, 461 U.S. at 148, 103 S.Ct. at 1690-91). The district court assumed the fact that Chateaubriand disfavored any illegal campaign activity in the Caucus. He complained not just of pressure on his staff to perform illegal functions, but of the impropriety of illegal campaigning in general. These facts, which the reviewing court accepts as given, demonstrate a public rather than a purely private motive for Chateaubriand's speech. The form of the speech--complaints to staff and superiors rather than to the general public--does not remove it from the realm of public concern. See Connick, 461 U.S. at 146, 103 S.Ct. at 1689 ("First Amendment protection applies when a public employee arranges to communicate privately with his employer rather than to express his views publicly.") (citing Givhan v. Western Line Consol. Sch. Dist., 439 U.S. 410, 415-16, 99 S.Ct. 693, 696-97, 58 L.Ed.2d 619 (1979)).
 
 
 34
 As the law stood when the Caucus leaders demoted and replaced Chateaubriand, it was clearly established that his alleged speech addressed matters of public concern, and thus was protected.
 
 2
 
 35
 The next issue is whether the protected speech was a substantial or motivating factor in the adverse employment decision. See Mt. Healthy, 429 U.S. at 287, 97 S.Ct. at 576. The district court determined that triable issues of fact exist on causation, stating that the reasons for Chateaubriand's demotion present a "very close question." The Caucus leaders challenge this conclusion. They argue that undisputed evidence establishes that Gaspard and Snyder were unaware of Chateaubriand's complaints when they demoted him. Without knowledge of his speech, they could not have violated his clearly established rights.
 
 
 36
 This argument on causation "does not touch upon whether [the Caucus leaders] acted in the shadow of legal uncertainty" when they demoted Chateaubriand. Marshall v. Allen, 984 F.2d 787, 792 (7th Cir.1993) (internal quotation marks and citation omitted). "Instead, their argument asks us to determine that [Chateaubriand's] actions and speech did not contribute to the decision to discharge him." Id.
 
 
 37
 Under Johnson, we have no jurisdiction over "questions about whether or not a record demonstrates a 'genuine' issue of fact for trial." --- U.S. at ----, 115 S.Ct. at 2158. That includes "factual controversies about, for example, intent." Id.; see also Stella v. Kelley, 63 F.3d 71 (1st Cir.1995) (on qualified immunity appeal, Johnson prohibits appellate court from reviewing district court's finding that triable issue exists on public employer's actual motive in removing employee from office). The district court determined that Chateaubriand presented sufficient evidence for a jury to find that the Caucus leaders were aware of his complaints and demoted him because of them.
 
 
 38
 We have no jurisdiction to review factual issues in this context. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.1996) ("Given the district court's determination that there is a triable issue as to deliberate indifference, the doctors were not entitled to summary judgment on the ground that they could reasonably have believed their conduct did not violate clearly-established law."). The only issue before us is purely legal: whether the alleged facts support a claim of violation of clearly established law. To resolve this issue, we assume, as the district court did, that the Caucus leaders demoted Chateaubriand in retaliation for his speech.
 
 3
 
 39
 Even if, however, a public employer terminates an employee for protected speech, we must balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Umbehr, --- U.S. at ---- - ----, 116 S.Ct. at 2347-48 (quoting Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734-35, 20 L.Ed.2d 811 (1968)). "The Pickering analysis requires particularized balancing based on the unique facts presented in each case." Voigt, 70 F.3d at 1560-61 (citing Connick, 461 U.S. at 150, 103 S.Ct. at 1691-92).
 
 
 40
 The Caucus leaders do not argue on appeal that Chateaubriand's complaints undermined "the effective functioning" of their enterprise. See Rankin, 483 U.S. at 388, 107 S.Ct. at 2899. In fact, Gaspard and Snyder claim they were not even aware of the complaints. The district court did not conduct the Pickering balance for this reason, and it is not in issue on appeal. Cf. Kincade v. City of Blue Springs, Mo., 64 F.3d 389, 398-99 (8th Cir.1995) (Appellants "have not put the Pickering balancing test at issue, and accordingly, we reject their claim that they are entitled to qualified immunity because free speech questions for public employees, as a matter of law, cannot be 'clearly established.' "), cert. denied, --- U.S. ----, 116 S.Ct. 1565, 134 L.Ed.2d 665 (1996).
 
 
 41
 We are nonetheless well aware of the government's important interests "in the effective and efficient fulfillment of its responsibilities to the public." Connick, 461 U.S. at 150, 103 S.Ct. at 1692. Had the Caucus leaders alleged that Chateaubriand's speech undermined the effective functioning of their enterprise, the Pickering balance would weigh in our analysis.[4]
 
 
 42
 To summarize, it is beyond dispute that a public employer may not retaliate against an employee for speech on a matter of public concern. At the time the Caucus leaders demoted Chateaubriand, it was clearly established that his complaints, as described by the district court, addressed matters of public concern. Accepting the fact that he was demoted for those complaints, the conduct he alleges violated clearly established rights of which a reasonable person would have known. Accordingly, the Caucus leaders are not entitled to qualified immunity.
 
 IV
 
 43
 For the foregoing reasons, the district court properly concluded that the Caucus leaders were entitled to neither absolute nor qualified immunity.
 
 
 44
 AFFIRMED.
 
 
 
 [1]
 Chateaubriand also asserted a state law cause of action alleging that his demotion and termination violated the public policy of the State of Washington. The district court's order denying summary judgment as to this cause of action is not part of the appeal
 
 
 [2]
 Even though Brown was Caucus Staff Director, not a legislator, the same analysis applies. If the legislative assistant's conduct would be immune if performed by the legislator himself, the legislative assistant shares the immunity. See Eastland v. United States Servicemen's Fund, 421 U.S. 491, 507, 95 S.Ct. 1813, 1823, 44 L.Ed.2d 324 (1975); Gravel v. United States, 408 U.S. 606, 616, 92 S.Ct. 2614, 2622-23, 33 L.Ed.2d 583 (1972); National Ass'n of Social Workers v. Harwood, 69 F.3d 622, 631 n. 10 (1st Cir.1995)
 
 
 [3]
 On the other hand, employment decisions accomplished through traditional legislative functions are protected legislative acts. See, e.g., Alexander v. Holden, 66 F.3d 62, 65 (4th Cir.1995) (budget decision to eliminate position, rather than terminate specific individual, was legislative); Rateree v. Rockett, 852 F.2d 946, 949 (7th Cir.1988) (elimination of jobs from city budget, unlike firing specific individuals, was legislative). These cases do not question that employment and personnel decisions are typically administrative acts
 
 
 [4]
 We also note that the Caucus leaders do not assert any political justification for demoting Chateaubriand