

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-29-2006

# Fowler-Nash v. Democratic Caucus

Precedential or Non-Precedential: Precedential

Docket No. 06-1636

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Fowler-Nash v. Democratic Caucus" (2006). *2006 Decisions.* Paper 135.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/135

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 06-1636

AMY L. FOWLER-NASH

v.

THE DEMOCRATIC CAUCUS OF THE PENNSYLVANIA
HOUSE OF REPRESENTATIVES;
R. TED HARHAI, Pennsylvania State Representative,
in his official and individual capacity;
SCOTT BRUBAKER, Director of Staffing
and Personnel for the Democratic Caucus
of the Pennsylvania House of Representatives
in his official and individual capacity,

Appellants

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No.: 05-cv-01672
District Judge: The Honorable Arthur J. Schwab

Argued on October 26, 2006

Before: SMITH, WEIS, and NYGAARD, *Circuit Judges*

(Filed:  November 29, 2006)

Danielle Banks, Esq. (argued)
Stradley, Ronon, Stevens & Young
2600 One Commerce Square
Philadelphia, PA  19103
        *Counsel for Appellants*

George A. Bibikos, Esq.
John P. Krill Jr., Esq.
Linda J. Shorey, Esq.
Kirkpatrick & Lockhart Nicholson Graham
17 North Second Street
18th Floor
Harrisburg, PA 17101
        *Counsel for Amicus-Appellant*

Samuel J. Cordes, Esq. (argued)
Ogg, Cordes, Murphy & Ignelzi
245 Fort Pitt Boulevard
Pittsburgh, PA  15222
        *Counsel for Appellees*

---

## OPINION

SMITH, *Circuit Judge*.

2

Amy Fowler-Nash ("Fowler-Nash") brought suit pursuant to 42 U.S.C. § 1983 against the Democratic Caucus of the Pennsylvania House of Representatives ("the Caucus"), state representative Ted Harhai, and Scott Brubaker, Director of Staffing and Personnel for the Caucus. Fowler-Nash alleged that she was discharged from her position as a legislative assistant to Harhai in violation of her First and Fourteenth Amendment rights. The Caucus filed a motion for judgment on the pleadings on the basis of common law legislative immunity. FED. R. CIV. P. 12(c). The Caucus argued that it was entitled to absolute legislative immunity as Fowler-Nash was employed as a legislative assistant, and her firing was therefore necessarily "within the sphere of legitimate legislative authority." *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951).

The District Court denied the Caucus's Rule 12(c) motion, holding that the Caucus did not exercise a legislative function when it terminated Fowler-Nash. The Caucus contends that application of a functional test, derived from the Supreme Court's opinion in *Forrester v. White*, 484 U.S. 219 (1988), was error. The Caucus argues for an "alter ego" test that would look to the duties of the discharged employee, not to the nature of the personnel action taken.

We reject the Caucus's argument. We will apply *Forrester*'s functional test to claims of absolute legislative immunity, and will affirm the District Court's decision that the Caucus is not entitled to immunity in this case. The "alter ego" test lacks precedential support from the Supreme Court, from

3

our own Court, or from other courts of appeals.  Its adoption would open a circuit split.  The "alter ego" approach is also a poorer reflection of the purposes of legislative immunity than the functional approach.  Though this is a question of first impression before this Court, our own jurisprudence regarding municipal personnel actions strongly suggests that the Caucus should not be shielded by legislative immunity.  We will affirm the District Court's denial of the Caucus's Rule 12(c) motion.

## I.  Facts and Procedural History

Ted Harhai is an elected Democratic Representative in the Pennsylvania House of Representatives.  John J. Harhai, Representative Harhai's brother, ran for a seat on the City Council of Monessen, Pennsylvania in the 2005 Democratic primary.  John Harhai lost by seven votes to Jeffery Gagatko, then filed a Petition to Recanvass in the Court of Common Pleas of Westmoreland County, Pennsylvania.  Pursuant to Pennsylvania law, the Petition included 39 affidavits from qualified electors alleging fraud or irregularities.  Each of these affidavits was notarized pursuant to state law.  Recanvassing yielded a nine vote victory for Harhai.

Fowler-Nash was working at the time as a legislative assistant to Representative Harhai.  Fowler-Nash informed counsel for Gagatko that many of the electors' affidavits had been improperly notarized in the electors' absence, in violation of state law.  Gagatko filed an Emergency Petition to Set Aside the Recanvass.  Fowler-Nash was subpoenaed to testify at a

4

hearing on the Emergency Petition. She informed Gagatko's counsel that many of the electors were meeting with the notary in Representative Harhai's office so that they would be able to identify the notary at the hearing and falsely state that the notary had been present when the affidavits were signed.

Before the hearing was held, however, the parties agreed to a stipulation that the 39 affidavits were not signed in the presence of the notary. The trial judge by an order dated July 11, 2005 then vacated its initial June 22, 2005 order that provided for a recanvassing of the votes. John Harhai appealed. One week after John Harhai's appeal was decided against him, Brubaker terminated Fowler-Nash, informing her that Representative Harhai could no longer trust her. Fowler-Nash filed suit against the Caucus, Representative Harhai, and Brubaker in federal district court, pursuant to 42 U.S.C. § 1983. The Caucus moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The Caucus stated in its Rule 12(c) motion that Fowler-Nash had been terminated for "excessive telephone usage, internet privilege abuses and overall job performance." The District Court denied the motion. The Caucus filed the instant appeal.[1]

---

[1] The District Court had federal question jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction under the Collateral Order Doctrine of an order denying absolute immunity. *In re Montgomery County*, 215 F.3d 367, 373 (3d Cir. 2000).

Because "[t]his appeal presents a purely legal question

## II. Discussion

The doctrine of legislative immunity flows from English common law and the many centuries of struggle between the English Crown and Parliament. *See Tenney v. Brandhove*, 341 U.S. 367, 372 (1951). Various English monarchs condemned parliamentarians to prison for proposing or supporting bills they found unhelpful. *Id.* The Glorious Revolution ended this practice by codifying legislative immunity–"[t]hat the Freedom of Speech, and Debates or proceedings in Parliament not to be impeached or questioned in any Court or Place out of Parliament"–in the English Bill of Rights of 1689. *Id.*

A century later, the Framers included a similar clause in the Articles of Confederation, and then in Article I, Section 6 of the United States Constitution: "[F]or any speech or debate in either house [the members] shall not be questioned in any other place." U.S. Const. art. I, § 6, cl. 1; *see Tenney*, 341 U.S. at 372. The *Tenney* Court aptly summed up the purposes of the Speech and Debate Clause, stating that legislators must be "immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good." 341 U.S. at 377.

---

concerning the scope of the immunity doctrine," we exercise plenary review over the District Court's denial of the Rule 12(c) motion on legislative immunity grounds. *Donivan v. Dallastown Borough*, 835 F.2d 486, 487 (3d Cir. 1987).

The Speech and Debate Clause does not, by its terms, extend any protection to state legislators or officials. Nevertheless, the *Tenney* Court extended legislative immunity to state legislators and officials as federal common law, extensively referencing the immunity's deep common law origins. *Id.* at 372. The Supreme Court has similarly extended common law legislative immunity to local legislative officials, see *Bogan v. Scott-Harris*, 523 U.S. 44 (1998) (extending legislative immunity to members of a city council), and to non-legislators legitimately engaged in a legislative function. *See Supreme Court of Va. v. Consumers Union of the United States*, 446 U.S. 719, 732 (1980) (extending legislative immunity to Virginia Supreme Court justices in promulgating a code of professional responsibility).

The Supreme Court has often stated that the purpose of common law legislative immunity is to reinforce the separation of powers and safeguard legislative independence. *See, e.g.*, *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975); *United States v. Brewster*, 408 U.S. 501, 507 (1972). Legislative immunity may protect an official exercising a legislative function "from inquiry into legislative acts or the motivation for actual performance of legislative acts," *Brewster*, 408 U.S. at 508, "from the burden of defending" certain suits, *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967), and "from the consequences of litigation's results." *Id.*

The Supreme Court rejected in *Brewster* the view that the Speech and Debate Clause protects "all conduct related to the

7

due functioning of the legislative process." *Brewster*, 408 U.S. at 513. The Court stated that, "[w]e would not think it sound or wise, simply out of an abundance of caution to doubly insure legislative independence, to extend the privilege beyond its intended scope, its literal language, and its history, to include all things in any way related to the legislative process." *Id.* at 516. On the same day that it decided *Brewster*, the Court took a broad view in *Gravel v. United States* of *who* could invoke legislative immunity, holding that a legislative aide could invoke immunity if a legislator could invoke the immunity under the same circumstances. 408 U.S. 606, 608-10 (1972). As to *what* actions were protected by legislative immunity, the Court took a narrow view, stating that the "heart of the Clause is speech or debate in either House," and that "[i]nsofar as the Clause is construed to reach other matters, they must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Id.* at 625.

This Court has held that the federal common law immunity is "coterminous" with the federal constitutional legislative immunity, see *Larsen v. Senate of the Commonwealth of Pa.*, 152 F.3d 240, 249 (3d Cir. 1998), though the Supreme Court has expressed particular reluctance about extending a common law immunity. *See Forrester v. White*, 484 U.S. 219, 220 (1988) (describing the Court's "absolute official immunity"

jurisprudence as "quite sparing").

The Pennsylvania Constitution contains a Speech and Debate Clause that tracks the federal clause, but it cannot shield a legislator from a violation of federal law. *See* Pa. Const. art. II, sec. 15.

## A. The Functional Test is Appropriate for Legislative Immunity

The Caucus contends that the District Court erred in applying a "functional approach," in which immunity hangs on whether an action serves "the due functioning of the legislative process." *United States v. Brewster*, 408 U.S. 501, 516 (1972). The Supreme Court applied this "functional" approach to a personnel decision in *Forrester v. White*, 484 U.S. 219, 224 (1988).

The Caucus, however, argues for an "alter ego" test for the application of legislative immunity. Under this approach, the Court should determine if the person fired, demoted, or otherwise affected by the legislator's decision was so closely linked to the legislative process that any actions taken towards them were, in effect, legislative.

The Caucus contends that the District Court's application of the *Forrester* "functional" test was error for several reasons. The Caucus contends that (1) *Forrester* concerned a personnel decision made by a judge and should not therefore be applied to

9

legislative immunity, and that (2) a circuit split exists on the question of which test is appropriate. We reject the first contention. The second is simply wrong.

### 1. *Forrester* has been applied to legislative immunity by every Court of Appeals to consider the issue

The Caucus contends that the "functional" test laid out by the Supreme Court in *Forrester* should be limited to judicial immunity, as *Forrester* concerned a state judge's claim of immunity after firing a probation officer. We reject this sharp limitation of *Forrester*. The Court's opinion in *Forrester* strongly suggests that it intended the "functional" test to be applied broadly. *Forrester v. White*, 484 U.S. 219, 227 (1988). Every court of appeals to consider the issue has followed the Court's suggestion and applied the *Forrester* test to legislative immunity.

In *Forrester*, an Illinois state judge demoted, then discharged, a female adult probation officer. *Id.* at 221. The discharged officer alleged that she had been discriminated against because of her sex, in violation of the Fourteenth Amendment. *Id.* The judge argued that this personnel action was protected by absolute judicial immunity. *Id.* The *Forrester* Court unanimously rejected this claim. *Id.* at 229-30.

The *Forrester* Court noted that "[d]ifficulties have arisen primarily in attempting to draw the line between truly judicial

acts, for which immunity is appropriate, and acts that simply happen to have been done by judges," and that "[h]ere, *as in other contexts*, immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches." *Id*. at 227 (emphasis added) (citing many cases concerning legislators and executive officials). The Court noted that "[r]unning through our cases, with fair consistency, is a 'functional' approach to immunity questions other than those that have been decided by express constitutional or statutory enactment." *Id*. at 224. The Court responded to the threat of "vexatious" lawsuits by former employees by pointing out that this factor in "no way serves to distinguish judges from other public officials who hire and fire subordinates." *Id*. at 330-31. The *Forrester* Court did not perceive its decision as announcing a new test, but rather restating and clarifying a "functional" approach that it had articulated in prior cases, many of which concerned legislative immunity. *Id.*

The Court most recently applied the functional approach to a claim of common law legislative immunity from a personnel action claim in *Bogan v. Scott-Harris.* 523 U.S. at 52 ("Absolute immunity for local legislators under § 1983 finds support not only in history, but also in reason."). The *Bogan* Court clarified that the functional inquiry is purely objective, holding that, "[w]hether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it. . . . This leaves us with the question whether, stripped of all considerations of intent and motive, petitioners' actions were legislative." *Id*. at 54-55. The Court unanimously

11

held that the city officials who had eliminated plaintiff's position by passage of a new budget had acted legislatively as "acts of voting for an ordinance were, in form, quintessentially legislative." *Id*. at 55 (observing that introduction of a budget and signing into law an ordinance are "formally legislative" and "integral steps in the legislative process.").

We have applied *Forrester* outside the context of judicial immunity. *See Schrob v. Catterson*, 948 F.2d 1402, 1409 (3d Cir. 1991) (stating that the "Supreme Court has outlined a functional approach to immunity issues," and applying *Forrester* to prosecutorial immunity (internal quotes omitted)). Other courts of appeals have uniformly adopted this view of *Forrester* and expressly applied the case to legislative immunity. *See Kamplain v. Curry County Bd. of Comm'rs*, 159 F.3d 1248, 1251 (10th Cir. 1998) ("In order to determine whether Defendants should be cloaked in legislative immunity, we look to the function that the Board members were performing when the actions at issue took place and we examine the nature of those actions."); *Chateaubriand v. Gaspard*, 97 F.3d 1218, 1220 (9th Cir. 1996) ("To determine whether legislative immunity applies, courts look to 'the nature of the function performed, not the identity of the actor who performed it.'"); *Alexander v. Holden*, 66 F.3d 62, 65 (4th Cir. 1995) ("Under *Forrester v. White*, the functions of the [Brunswick County] commissioners determine whether their actions are legislative or administrative for purposes of immunity."); *Hansen v. Bennett*, 948 F.2d 397, 401 (7th Cir. 1991) ("We look only to the function [Mayor] Bennett was performing when he ejected Hansen. We apply this

12

functional approach even when evaluating conduct that takes place within a meeting which includes some legislative business."); *Gross v. Winter*, 876 F.2d 165, 170 (D.C. Cir. 1989) (applying *Forrester* to a firing by a Washington, D.C. city council member). No court to have considered the issue has limited *Forrester* in the manner the Caucus proposes.

The Caucus urges a radical limitation on the functional test that is unsupported by Supreme Court or lower court precedent. We reject this proposed narrowing of the *Forrester* test.

### 2. The "alter ego" approach to legislative immunity has been rejected by every Court of Appeals to consider the issue

The Caucus repeatedly states that a circuit split exists as to whether the "alter ego" or "functional" test applies to legislative immunity for personnel actions. The Caucus relies on two cases, *Agromayer v. Colberg* and *Browning v. U.S. House of Representative*s, of the First Circuit and D.C. Circuit, respectively, to support this proposition. *See Agromayer v. Colberg*, 738 F.2d 55, 60 (1st Cir. 1984); *Browning v. U.S. House of Representatives*, 789 F.2d 923, 929 (D.C. Cir. 1986). No such split exists. The Court of Appeals for the First Circuit has repeatedly undermined or ignored *Agromayer* and the Court of Appeals for the D.C. Circuit recently repudiated *Browning* in an en banc decision that unanimously rejected the "alter ego" approach. *See Fields v. Office of Eddie Bernice Johnson*, 459

F.3d 1, 6-7 (D.C. Cir. 2006).

### i. *Agromayer* is no longer applied in the First Circuit

The First Circuit held in *Agromayer* that the politically motivated refusal to hire a member of the opposing political party as a legislative press officer was protected by common law legislative immunity. *Agromayer v. Colberg*, 738 F.2d 55, 60 (1st Cir. 1984). The *Agromayer* Court held that "an employee dealing with the deliberative and communicative processes must be of direct legislative importance." *Id.* (citing *Gravel v. United States*, 408 U.S. 606, 625 (1972)) (internal quotes and citations omitted). The Court stated that, "in applying the immunity we decline to inquire deeply into the functions performed by a particular personal legislative aide, inasmuch as such an inquiry itself threatens to undermine the principles that absolute immunity was intended to protect." *Agromayer*, 738 F.2d at 60. The Court held that personnel actions concerning employees with "enough opportunity for 'meaningful input' into the legislative process" should be immunized. *Id.*

The *Agromayer* Court relied on Chief Justice Burger's dissent in *Davis v. Passman* for this approach. *Id.* at 60 (citing *Davis v. Passman*, 442 U.S. 228, 249-50 (1979) (Burger, C.J., dissenting)). The *Davis* Court declined to reach the legislative immunity issue raised by a United States congressman who fired a female aide, allegedly on account of her sex. *Davis*, 442 U.S. at 248-49. However, Justices Burger, Powell, and Rehnquist

14

wrote separately to argue that the Court should have reached the issue and that it should have been decided in favor of immunity. *Id*. at 249-50. The dissent stated that a

> Member of Congress has a right to expect that every person on his or her staff will give total loyalty to the political positions of the Member, total confidentiality, and total support. . . . lead[ing] a Member to employ a particular person on a racial, ethnic, religious, or gender basis thought to be acceptable to the constituency represented, even though in other branches of Government–or in the private sector–such selection factors might be prohibited.

*Id*. Chief Justice Burger concluded that "long-accepted concepts of separation of powers dictate, for me, that until Congress legislates otherwise as to employment standards for its own staff, judicial power in this area is circumscribed." *Id*.

The First Circuit Court of Appeals began to move away from the *Agromayer* approach even before *Forrester* called the decision into question. A year after *Agromayer*, the First Circuit turned toward a more functional analysis in *Cutting v. Muzzey*, in which the Court held that a town board's imposition of "outrageous conditions" on a subdivision proposal was not protected by legislative immunity. 724 F.2d 259, 262 (1st Cir. 1984). The *Cutting* Court laid out a two part test "for distinguishing between legislative and administrative activity." *Id*. at 262. The Court asked first whether the decision was based

15

on "legislative facts," generalizations or considerations of policy, and second, whether the decision had a legislative impact, extending prospectively and beyond one person or a small group. *Id.*

The First Circuit continued to apply this strain of functional analysis after *Forrester*. The Court stated in 1992 that, "[u]nder current legal theory, immunity attaches or does not attach depending on what kind of action was performed rather than on who performed the action," referring to a decision to eliminate several civil service positions occupied by political opponents. *Acevedo-Cordero v. Cordero-Santiago*, 958 F.2d 20, 23 (1st Cir. 1992). The Court then explicitly applied the *Cutting* legislative facts/legislative effects test to the firing of a legislative librarian, extensively referencing *Forrester* in the process. *Negron-Gaztambide v. Hernandez-Torres*, 35 F.3d 25, 28 (1st Cir. 1994) ("The issue is thus whether defendants were acting in a legislative or administrative capacity when they discharged Negron."). The Court reiterated its commitment to a functional test in a case concerning various personnel actions against 88 civil service employees, stating that "[e]mployment decisions generally are administrative except when they are accomplished through traditional legislative functions such as policymaking and budgetary restructuring that strike at the heart of the legislative process." *Acevedo-Garcia v. Vera-Monroig*, 204 F.3d 1, 8 (1st Cir. 2000) (internal quotes omitted). *See also Romero-Barcelo v. Hernandez-Agosto*, 75 F.3d 23, 29 (1st Cir. 1996) ("Acts . . . that are administrative in nature do not give rise to absolute immunity from liability in damages under §

16

1983.") (quoting *Forrester*, 484 U.S. at 229); *Nat'l Ass'n of Social Workers v. Harwood*, 69 F.3d 622, 643 (1st Cir. 1995) ("Because immunity is defined by the functions it serves, even legislators themselves are not immune for actions taken in an administrative capacity.") (quoting *Forrester*, 484 U.S. at 227).

The First Circuit has never explicitly overturned *Agromayer*. It has, instead, abandoned altogether the "alter ego" approach to legislative immunity.

### ii. The D.C. Circuit unanimously rejected the "alter ego" approach in *Fields v. Johnson*

The Caucus relied on the D.C. Circuit's decision in *Browning v. U.S. House of Representatives* as a second case demonstrating a circuit split over which test should govern legislative immunity. *See Browning v. U.S. House of Representatives*, 789 F.2d 923, 929 (D.C. Cir. 1986). However, that Court unanimously and explicitly overturned *Browning* in its en banc decision in *Fields v. Office of Eddie Bernice Johnson*, and unanimously applied *Forrester*'s functional test to personnel actions. 459 F.3d 1, 6-7 (D.C. Cir. 2006).

The D.C. Circuit held in *Browning* that "the standard for determining Speech or Debate Clause immunity is best expressed as whether the employee's duties were directly related to the due functioning of the legislative process." *Browning,* 789 F.2d at 929. The Court concluded that the official reporter for the House was directly related to the legislative process and,

17

therefore, his firing was shielded by absolute legislative immunity. *Id.*

The *Fields* decision reconsidered *Browning* in light of *Forrester*. *See* 459 F.3d at 6-7. *Fields* was the consolidated appeals of two Congressional employees seeking redress for firings allegedly based on racial and disability discrimination. *Id*. at 5. The discharged employees availed themselves of the Congressional Accountability Act of 1995, 2 U.S.C. §§ 1301-1438, which, by its terms, does not displace Speech and Debate Clause immunity. *Fields,* 459 F.3d at 5. The D.C. Circuit noted that *Forrester* "cast doubt" on *Browning*. *Id*. at 7. The Court stated that its decision in *Gross v. Winter* had narrowed *Browning*, as the Court had found that *Forrester*, not *Browning*, controlled in a personnel action by a D.C. Council member. *Id*. *See Gross v. Winter*, 876 F.2d 165, 170 (D.C. Cir. 1989) (observing that *Browning* is "unquestionably [in] tension" with *Forrester*, "which accords no weight to the duties of the employee"). The Court noted with dismay that the Tenth Circuit's decision in *Bastien* had created a circuit split. *Fields,* 459 F.3d at 8. *See Bastien v. Office of Senator Ben Nighthorse Campbell*, 390 F.3d 1301 (10th Cir. 2004). In explicitly rejecting the *Browning* test, the *Bastien* Court held that Speech and Debate Clause immunity protected a U.S. Senator in a personnel action only when the plaintiff "questioned the conduct of official Senate legislative business." *Bastien*, 390 F.3d at 1304.

The *Fields* Court stated that many personnel actions lack

18

even "some nexus" to a protected legislative activity and that, "[f]iring an aide for falsifying expense reports, or disciplining an assistant for harassing others in the office is not, by any conceivable interpretation, an act performed as a part of or even incidental to the role of a legislator." 459 F.3d at 11 (quoting *United States v. Brewster*, 408 U.S. 526, 507(1972)). The majority opinion written by Judge Randolph overturned *Browning*:

> We now see that an employee's duties are too crude a proxy for protected activity. Our holding in *Browning* presumes that a personnel decision with regard to an employee whose duties are "directly related to the due functioning of the legislative process," is always "an integral part of the deliberative and communicative processes." But the presumption is, at a minimum, overinclusive and therefore inconsistent with the Court's practice of being "careful not to extend the scope of the protection further than its purposes require." Any number of counter-examples reveal as much: a legislative aide may be discharged because of budgetary cutbacks; a staff member may be demoted solely for consistent tardiness; a person seeking a top-level staff position might be rejected for having a poor college transcript; and so forth. That the person targeted by the personnel decision performs duties "directly related to . . . the legislative process," is not enough–conduct must

19

> be "part of," not merely "related to," the "due functioning" of the "legislative process" to be protected by the Speech or Debate Clause. At best, that an employee's duties are directly related to the legislative process establishes merely "some nexus" between the personnel decision and that process. We therefore reject *Browning*'s test for determining when a legislator's personnel decision is protected by the Speech or Debate Clause.

*Id.* at 11-12 (internal citations omitted). The Court then rejected the argument that "[d]irecting one's alter egos–that is, legislative aides with duties directly related to the legislative process–necessarily is an integral part of the processes of achieving one's legislative goals, because of the duties such employees perform." *Id.* at 12 (internal quotes omitted). The Court noted that "[t]he Speech or Debate Clause protects conduct that is integral to the legislative *process*, not a Member's legislative *goals*," and that many activities that are integral to "legislative goals," such as sending newsletters or delivering speeches to constituents, are "political," not "legislative,"–and are therefore beyond the scope of legislative immunity. *Id.* The Court also noted that, "[a]nother problem with the formulation lies in its assumption that a Member only directs his alter egos with regard to constitutionally protected activities." *Id.* The *Fields* Court emphasized *Gravel*'s conclusion that simply because a Senator performs certain duties in his official capacity does not make those duties legislative. *Id.* (citing *Gravel v. United States*, 408 U.S. 606, 625 (1972)).

20

The *Fields* Court held that, "[l]egislative aides are no different." *Fields,* 459 F.3d at 12.

The *Fields* Court was splintered on some issues, but not, as Judge Tatel pointed out in his concurrence, on the issues discussed above. *Fields*, 459 F.3d at 18 ("I take some solace from the fact that the commonalities of our opinions exceed their differences.") (Tatel, J., concurring). The principal concurrence, authored by Judge Brown, focuses on who may invoke derivative legislative immunity, arguing that only "alter ego[s]" of the representative may do so. *Id*. at 22-24 (Brown, J., concurring). This line of debate is not germane to the instant case, as Judge Brown was concerned with *who* may invoke legislative immunity, not with *what actions* are immune. *Id*. Nevertheless, Judge Tatel's attack on the very concept of legislative alter egos is instructive:

> No one acts as a Member's alter ego all the time: even a Member's primary legislative aide does not act as the Member's alter ego when brushing her teeth. Whether an aide acted as a Member's alter ego turns on the particular act the aide performed on the Member's behalf. Reinforcing this point, *Gravel v. United States*, the first case to have used the term "alter ego," focuses on the aide's actions: "the Speech or Debate Clause applies not only to a Member but also to his aides insofar as the conduct of the latter would be a protected legislative act if performed by the Member himself."

21

*Id.* at 19 (quoting *Gravel*, 408 U.S. at 619). Judge Tatel makes the same point as Fowler-Nash: that the Caucus's "alter ego" theory is essentially an inapposite analogy to *Gravel*.

In its supplemental brief, the Caucus and its amicus, the Republican Caucus, urge several distinctions from *Fields* that are not persuasive. The Caucus urges that the application of the Congressional Accountability Act in *Fields* makes it distinguishable and that we must resolve the instant case without regard to the Congressional intent behind the Congressional Accountability Act. However, the *Fields* Court acknowledged at the outset that the Accountability Act, by its terms, does not disturb Speech and Debate Clause immunity. *Id*. at 8-9. Accordingly, the intent behind the Accountability Act appears to have played no role in the Court's decision. *Id*.

## B. Applying the *Forrester* functional test

This Court will apply the functional test articulated in *Forrester*. The Democratic Caucus was not acting in a legislative capacity when it fired Fowler-Nash and should not be protected by absolute legislative immunity.

This Court has relied on a functional approach since well before *Forrester* was handed down. *See Aitchison v. Raffiani*, 708 F.2d 96, 99 (3rd Cir. 1983) ("We look to the function the individual performs rather than his location within a particular branch of government."). After *Forrester*, this Court reaffirmed its commitment to a functional approach and articulated a two

prong test for determining whether a particular action is legislative. *See Ryan v. Burlington County, N.J.*, 889 F.2d 1286, 1290 (3rd Cir. 1989) ("It is only with respect to the legislative powers delegated to them by the state legislatures that the members of local governing boards are entitled to absolute immunity.").

The two part test developed by this Court inquires into whether an action was both "substantively" and "procedurally" legislative when undertaken by municipal legislators and officials. *Ryan*, 889 F.2d at 1290-91 (holding that staffing decisions regarding county jails were not legislative).[2] We did

---

[2] The *Ryan* Court echoed the two part test articulated by several other courts:

> There are two requirements which an act must meet in order to be regarded as legislative for immunity purposes. First, the act must be "substantively" legislative, i.e., legislative in character. Legislative acts are those which involve policy-making decision[s] of a general scope or, to put it another way, legislation involves line-drawing. Where the decision affects a small number or a single individual, the legislative power is not implicated, and the act takes on the nature of administration. In addition, the act must be "procedurally" legislative, that is, passed by means of established legislative procedures. This principle requires that

not, however, apply the test developed at the municipal level to the allegedly unconstitutional impeachment of a state Supreme Court justice by the Pennsylvania Senate because "[t]he line-drawing between administrative and legislative acts at issue in these cases has no bearing under the situation before us because neither party suggests that the Senators were acting in an administrative capacity," and, "because concerns for the separation of powers are often at a minimum at the municipal level." *Larsen v. Senate of Commonwealth of Pa.*, 152 F.3d 240, 252 (3d Cir. 1998). The *Larsen* Court extended immunity to the state senators because "power was consciously assigned to the Senate primarily as a function of the separation of powers," therefore the senators were acting within "the sphere of legitimate legislative activity." *Id.* This Court recently expanded on this analysis, holding that "allocating the total appropriation for office staffing among the Democratic house members [is] within the sphere of legitimate, legislative activity." *Youngblood v. DeWeese*, 352 F.3d 836, 841 (3d Cir. 2003) (quoting *Tenney*, 341 U.S. at 376) (internal quotes omitted). Accordingly, the allegedly punitive passage by state

constitutionally accepted procedures of enacting the legislation must be followed in order to assure that the act is a legitimate, reasoned decision representing the will of the people which the governing body has been chosen to serve.

*Ryan*, 889 F.2d at 1290-91.

24

legislators of an appropriation bill that cut back an opponent's staff was entitled to immunity. *Id.*

The *Larsen* Court held that the two part test developed for municipal immunity did not apply to state legislators. 152 F.3d at 252. This Court has, however, developed an extensive jurisprudence exploring the distinction between legislative and administrative actions at the municipal level. Although these cases are not controlling in this context, their reasoning is instructive. This Court has repeatedly stated that "decisions affecting a single individual or a small number of people do not implicate legislative power and, thus, such actions are administrative in nature," whereas decisions affecting the community at large are likely legislative–though this inquiry is not necessarily conclusive. *Acierno v. Cloutier*, 40 F.3d 597, 610 (3d Cir. 1994); *see also Donivan v. Dallastown Borough*, 835 F.2d 486, 487 (3d Cir.1987), *Rogin v. Bensalem Twp.*, 616 F.2d 680, 693-94 (3d Cir. 1980). The *Acierno* panel refined this test and added that an appropriate inquiry includes whether the legislator had acted to promulgate new law or policy, or was merely enforcing existing policy. *Acierno*, 40 F.3d at 610. We applied this test to a personnel action in *Carver*, in which several high-level municipal employees were fired and their positions eliminated, allegedly due to their political affiliation. *Carver v. Foerster*, 102 F.3d 96, 100 (3d Cir. 1996). The Court assumed that "a legislative body's decision to eliminate a government position, in contrast to the mere termination of a person's employment, is legislative activity," but that neither the county nor the county commissioner was necessarily immune

from suit as they "acted in various capacities–legislative, executive and administrative." *Id.* The county commissioner had given "a unilateral order" to have political opponents fired, which was not "engaging in policy-making of general application regarding the expenditure of County funds, but [] making either an executive decision on how the anticipated cutback should be implemented or an administrative decision that certain individuals should be fired." *Id.* The Court also noted that an "unconstitutional or illegal course of conduct by county government does not fall within the doctrine of absolute immunity merely because it is connected to or followed by a vote of a county board." *Id.* at 101. This Court provided a useful counterexample in *Gallas v. Supreme Court of Pennsylvania*, where Pennsylvania Supreme Court justices were held immune after issuing an order for "administrative reorganization of the First Judicial District," that eliminated the position of Executive Administrator. 211 F.3d 760, 766 (3d Cir. 2000).

This approach to distinguishing administrative from legislative functions is particularly appealing as it tracks exactly the Supreme Court's analysis in *Bogan v. Scott-Harris*:

> Respondent, however, asks us to look beyond petitioners' formal actions to consider whether the ordinance was legislative in *substance*. We need not determine whether the formally legislative character of petitioners' actions is alone sufficient to entitle petitioners to legislative immunity,

26

because here the ordinance, in substance, bore all the hallmarks of traditional legislation. The ordinance reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents. Moreover, it involved the termination of a position, which, unlike the hiring or firing of a particular employee, may have prospective implications that reach well beyond the particular occupant of the office. And the city council, in eliminating [the Department of Health and Human Services], certainly governed in a field where legislators traditionally have power to act. Thus, petitioners' activities were undoubtedly legislative.

523 U.S. 44, 55-56 (1998) (internal quotes omitted). The Supreme Court refused to insist that formally legislative acts, such as passing legislation, also be "legislative in *substance*." *Id*. This aspect of *Bogan* prompted this Court in *Larsen* to drop the two part legislative facts/procedure test when considering absolute immunity claims by state legislators. 152 F.3d at 252. However, the *Bogan* Court also unanimously endorsed this Court's approach to identifying administrative action. 523 U.S. at 55-56.

This Court's approach to distinguishing administrative from legislative functions is consistent with the approach

27

adopted by other courts of appeals in reviewing personnel actions by state legislators. The First Circuit Court of Appeals adopted essentially the same distinction between administrative and legislative acts, holding that termination of a legislative librarian by state legislators was an administrative act and therefore not entitled to immunity from suit under 42 U.S.C. § 1983. *Negron-Gaztambide v. Hernandez-Torres*, 35 F.3d 25, 28 (1st Cir. 1994). The Ninth Circuit Court of Appeals has taken the same approach, holding that the Washington State Democratic Caucus acted administratively when it demoted and terminated a Senate information officer for allegedly refusing to engage in inappropriate campaign work. *Chateaubriand v. Gaspard*, 97 F.3d 1218, 1221 (9th Cir. 1996).

Neither Harhai nor Brubaker nor the Caucus were acting in a legislative capacity when they terminated Fowler-Nash. Harhai's decision did not reach beyond a single employee. It did not eliminate Fowler-Nash's position, thereby affecting future employees. Harhai's decision, according to the Caucus's pleadings, did not rely on any broad consideration of policy, neither was it directed to creating a new policy. It was a textbook example of a legislator performing an administrative function. The Caucus argues that this Court should hold that it is inappropriate for a court to even inquire after a pre-textual legislative purpose. However, this argument is inapposite as the Caucus did not offer even a legislative pretext for Fowler-Nash's termination.

The Caucus, Harhai, and Brubaker clearly exercised an

28

administrative function when they terminated Fowler-Nash. Common law legislative immunity does not apply.

## III. Conclusion

The Caucus's argument lacks any precedent to support it. The functional approach applied by the District Court is an accurate reflection of the Supreme Court's approach, this Court's precedents, and is compatible with our sister courts of appeals' decisions. The Caucus urges us to adopt a position that would re-create a circuit split that the D.C. Circuit has recently labored mightily to close. The "alter ego" approach is a poor reflection of the purposes of common law legislative immunity.

Notwithstanding the above, common law legislative immunity may still have a role to play in Fowler-Nash's suit. Harhai may well be able to invoke evidentiary protections if Fowler-Nash seeks to inquire into activities that are directly within the legislative sphere. However, the Caucus's Rule 12(c) motion for judgment on the pleadings on the grounds of legislative immunity was properly denied in the District Court. We will affirm the District Court's judgment.